Exhibit A

# SUMMONS
## (CITACION JUDICIAL)

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
LINDER PSYCHIATRIC GROUP, INC., a California Corporation;
DAVID LINDER, M.D., an individual; RENAE LINDER, an individual;
and DOES 1 to 100, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
JOELLE STALLSMITH, on behalf of herself and all others similarly
situated

**FILED/~~ENDORSED~~**

NOV 1 8 2014

By: _____
C. WHITFIELD
Deputy Clerk

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
720 Ninth Street, Sacramento, CA 95814

CASE NUMBER:
*(Número del Caso):*
34-2014-00171792

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
The Law Office of Brian Crone, Brian Crone, 1104 Corporate Way, Sacramento, CA, 95814, 916-395-4464

DATE:           NOV 1 8 2014
*(Fecha)*

Clerk, by           C. WHITFIELD           , Deputy
*(Secretario)*                                    *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Brian Crone (SBN 191731)/Erick Turin    SBN 236185)
The Law Office of Brian Crone/Turner Law Group
1104 Corporate Way
Sacramento, CA  95831
TELEPHONE NO.: 916-395-4464    FAX NO.: 916-395-4465
ATTORNEY FOR (Name): Plaintiff Joelle Stallsmith and all others similary situated

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Sacramento
STREET ADDRESS: 720 Ninth St.
MAILING ADDRESS:
CITY AND ZIP CODE: Sacramento, CA 95814
BRANCH NAME:

FOR COURT USE ONLY

FILED/ENDORSED

NOV 1 8 2014

By: _____ C. WHITFIELD
Deputy Clerk

CASE NAME:
STALLSMITH v. LINDER PSYCHIATRIC GROUP, INC.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: 34-2014-00171792 |
|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter ☐ Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: DEPT: |

Items 1–6 below must be completed (see instructions on page 2).

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☑ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint (not specified above) (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition (not specified above) (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties   d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. ☑ monetary  b. ☑ nonmonetary; declaratory or injunctive relief  c. ☐ punitive
4. Number of causes of action (specify): 7
5. This case ☑ is ☐ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)
Date: November 18 2014
BRIAN CRONE
(TYPE OR PRINT NAME)                         (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]
CIVIL CASE COVER SHEET
Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

| | FOR COURT USE ONLY |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO**<br>STREET ADDRESS: 720 Ninth STREET<br><br>MAILING ADDRESS: 720 Ninth STREET<br><br>CITY AND ZIPCODE: Sacramento, CA 95814-1311<br><br>BRANCH NAME: Gordon D Schaber Courthouse<br><br>PHONE NUMBER: (916) 874-5522 | |

| **SHORT TITLE:** StallSmith vs. Linder Psychiatric Group, Inc | |
|---|---|

| **NOTICE OF CASE MANAGEMENT CONFERENCE**<br>**AND ORDER TO APPEAR** | CASE NUMBER:<br>34-2014-00171792-CU-OE-GDS |
|---|---|

## Hearing Date

The above entitled action has been set for a case management conference at 08:30 AM on 10/22/2015 in Department 36 in accordance with California Rules of Court 212. You must be familiar with the case and fully prepared to participate effectively in the case management conference.

## Case Management Statement

All parties must file and serve a case management statement at least 15 calendar days before the case management conference. Parties are encouraged to file a single joint case management statement.

## Minimum Requirements
Prior to the filing of the case management statement, the parties should have done the following:
  -Served all parties named in the complaint within 60 days after the summons has been issued
  -Ensured that all defendants and cross-defendants have answered, been dismissed, or had their defaults entered
  -Met and conferred with all parties as required by CRC 212 (f) to discuss and resolve issues set forth therein.

## Tentative Ruling
Following its review of the case management statement(s), the court may determine that a case management conference is not necessary.
To determine whether an appearance is required, the parties must check the court's tentative rulings after 2:00 p.m. on the Court day before the Thursday calendar by accessing the court's internet website at www.saccourt.ca.gov

## Case Management Orders
At the case management conference, the court will consider whether the case should be ordered to judicial arbitration or referred to other forms of Alternative Dispute Resolution. Whether or not a case management conference is held, the court will issue a case management order shortly after the scheduled conference date.

## Service of Case Management Notice
Unless otherwise ordered by the court, plaintiff shall serve a copy of this notice on any party to the complaint appearing after the court issued this notice. The cross-complainant shall have the same obligation with respect to the cross-complaint.

## Certification Filed in Lieu of Case Management Statement
If parties in the action file a certification on a form provided by the court at least 15 calendar days prior to the date of the case management conference that the case is short cause (five hours or less of trial time), that the pleading stage is complete and that the case will be ready for trial within 60 days, the case will be exempted from any further case management requirements and will be set for trial within 60-120 days. The certification shall be filed in lieu of a case management statement.

---

**Compliance**
Failure to comply with this notice or to appear at the case management conference may result in the imposition of sanctions (including dismissal of the case, striking of the answer, or payment of money).

**Continuances**
Case management conference will not be continued except on a showing of good cause. If your case management conference is continued on motion or by the court on its own motion all parties shall file and serve a new case management statement at least 15 calendar days before the continued case management conference.

Dated: 11/19/2014

_Gerrit W Wood_
Gerrit W. Wood, Judge of the Superior Court

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* Brian Crone (SBN 191731)
The Law Office of Brian Crone
1104 Corporate Way
Sacramento, CA 95831

TELEPHONE NO.: 916-395-4464      FAX NO. *(Optional):* 916-395-4465
E-MAIL ADDRESS *(Optional):* briancrone@cronelawoffice.com
ATTORNEY FOR *(Name):* Plaintiff Joelle Stallsmith obo all others similarly situated

FOR COURT USE ONLY

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Sacramento
STREET ADDRESS: 720 Ninth St.
MAILING ADDRESS:
CITY AND ZIP CODE: Sacramento, CA 95814
BRANCH NAME:

PLAINTIFF/PETITIONER: JOELLE STALLSMITH, et al.

DEFENDANT/RESPONDENT: LINDER PSYCHIATRIC GROUP, INC., et al.

| **NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL** | CASE NUMBER:<br>34-2014-00171792 |
|---|---|

TO *(insert name of party being served):* DAVID LINDER, M.D. (c/o Alden Parker, Weintraub Tobin)

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: November 24, 2014

Brian Crone
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*
1. ☑ A copy of the summons and of the complaint.
2. ☑ Other *(specify):*
   Civil Case Coversheet, Notice of Case Management Conference and Order to Appear.

*(To be completed by recipient):*

Date this form is signed:

_____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

▶ _____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* Brian Crone (SBN 191731) | FOR COURT USE ONLY |
|---|---|

The Law Office of Brian Crone
1104 Corporate Way
Sacramento, CA 95831

TELEPHONE NO.: 916-395-4464        FAX NO. *(Optional):* 916-395-4465
E-MAIL ADDRESS *(Optional):* briancrone@cronelawoffice.com
ATTORNEY FOR *(Name):* Plaintiff Joelle Stallsmith obo all others similarly situated

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Sacramento
STREET ADDRESS: 720 Ninth St.
MAILING ADDRESS:
CITY AND ZIP CODE: Sacramento, CA 95814
BRANCH NAME:

PLAINTIFF/PETITIONER: JOELLE STALLSMITH, et al.

DEFENDANT/RESPONDENT: LINDER PSYCHIATRIC GROUP, INC., et al.

| **NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL** | CASE NUMBER:<br>34-2014-00171792 |
|---|---|

TO *(insert name of party being served):* LINDER PSYCHIATRIC GROUP, INC. (c/o Alden Parker, Weintraub Tobin)

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: November 24, 2014

Brian Crone
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*
1. ☑ A copy of the summons and of the complaint.
2. ☑ Other *(specify):*
   Civil Case Coversheet, Notice of Case Management Conference and Order to Appear.

*(To be completed by recipient):*

Date this form is signed:

_____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

▶ _____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* Brian Crone (SBN 191731)
The Law Office of Brian Crone
1104 Corporate Way
Sacramento, CA 95831

TELEPHONE NO.: 916-395-4464    FAX NO. *(Optional):* 916-395-4465
E-MAIL ADDRESS *(Optional):* briancrone@cronelawoffice.com
ATTORNEY FOR *(Name):* Plaintiff Joelle Stallsmith obo all others similarly situated

FOR COURT USE ONLY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Sacramento
STREET ADDRESS: 720 Ninth St.
MAILING ADDRESS:
CITY AND ZIP CODE: Sacramento, CA 95814
BRANCH NAME:

PLAINTIFF/PETITIONER: JOELLE STALLSMITH, et al.

DEFENDANT/RESPONDENT: LINDER PSYCHIATRIC GROUP, INC., et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER: 34-2014-00171792 |
| --- | --- |

TO *(insert name of party being served):* RENAE LINDER (c/o Alden Parker, Weintraub Tobin)

## NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: November 24, 2014

Brian Crone
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

## ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*
1. ☑ A copy of the summons and of the complaint.
2. ☑ Other *(specify):*
   Civil Case Coversheet, Notice of Case Management Conference and Order to Appear.

*(To be completed by recipient):*

Date this form is signed:

_____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

▶ _____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL

Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov

1  ERICK C. TURNER (State Bar No. 236186)
   **TURNER LAW GROUP**
2  1104 Corporate Way
   Sacramento, CA 95831
3  Telephone: (916) 529-3265
   erick@calaborcounsel.com
4

5  BRIAN S. CRONE (State Bar No. 191731)
   **THE LAW OFFICE OF BRIAN CRONE**
6  1104 Corporate Way
   Sacramento, CA 95831
7  Telephone: (916) 395-4464
   briancrone@cronelawoffice.com
8

9  Attorneys for Plaintiff JOELLE STALLSMITH

10            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11                    **COUNTY OF SACRAMENTO**

12

13  JOELLE STALLSMITH, on behalf of          ) Case No. 34-2014-00171792
    herself and all others similarly situated, )
14                                            )
                                              ) **COMPLAINT FOR DAMAGES:**
15            Plaintiff,                       )
                                              ) 1. **Failure to Pay Minimum Wages**
16       vs.                                   )    **(Labor Code § 1194)**
                                              ) 2. **Failure to Pay Overtime**
17  LINDER PSYCHIATRIC GROUP, INC.,           )    **Compensation (Labor Code §**
    a California Corporation; DAVID           )    **1194)**
18  LINDER, M.D., an individual; RENAE        ) 3. **Failure to Provide Itemized**
    LINDER, an individual; and DOES 1 to      )    **Statements (Labor Code § 226)**
19  100, inclusive;                           ) 4. **Waiting Time Penalties (Labor**
                                              )    **Code § 226.7)**
20            Defendants.                      ) 5. **Unfair Competition Law (Bus.**
                                              )    **& Prof. Code § 17200 et. seq.)**
21                                            ) 6. **Violation of Labor Code § 558**
                                              ) 7. **Failure to Provide Meal and Rest**
22                                            )    **Periods (Labor Code § 226.7)**
                                              ) 8. **Breach of Contract**
23                                            )
                                              )
24                                            ) **DEMAND FOR JURY TRIAL**
                                              )
25                                            )
                                              )
26                                            )
                                              )
27                                            )

28

---
PLAINTIFF'S CLASS ACTION COMPLAINT FOR DAMAGES                                    1

Plaintiff JOELLE STALLSMITH, on behalf of herself and all others similarly situated, complains and alleges as follows:

## INTRODUCTION

1. This is a class action brought by Plaintiff seeking unpaid overtime, unpaid minimum wages, and statutory penalties for violations of the California Labor Code and Industrial Welfare Commission Wage Orders.

2. During all relevant times, Plaintiff worked as a Clinician/Provider for Defendant LINDER PSYCHIATRIC GROUP, INC., which is owned by DAVID LINDER, M.D. and RENAE LINDER, who are also officers and shareholders of the company. Defendants paid Plaintiff and other similarly situated employees under a piece rate system, where Plaintiff and the Plaintiff Class earned money based only on the number of patients that they treated. Defendants did not pay Plaintiff wages for time spent preparing reports, for time spent waiting for appointments, and/or for time spent on controlled standby. Additionally, Defendants did not provide Plaintiff with accurate wage statements showing total hours worked and the rate of pay per hour as required by California Labor Code section 226.

## JURISDICTION AND VENUE

3. The Sacramento Superior Court has jurisdiction in this matter due to alleged violations of California Labor Code, Business and Professions Code section 17200 *et seq.*, and the Industrial Welfare Commission Wage Orders.

4. Venue is proper pursuant to Code of Civil Procedure sections 395(a) and 395.5 in that some of the wrongful acts and violations of law asserted herein occurred within Sacramento County. Furthermore, Defendants conduct business within Sacramento County. Additionally, Defendants obligation to pay minimum and other wages arose in Sacramento County pursuant to *Madera Police Officers Assn. v. City of Madera*, 36 Cal.3d 403, 414 (1984).

5. The California Superior Court has jurisdiction in this matter because Plaintiff is informed and believed, and on that basis asserts that both the individual claims of the

members of the Class herein are under the $75,000.00 jurisdictional threshold for Federal Court and the aggregate claim is under the $5,000,000.00 threshold of the Class Action Fairness Act of 2005.

6.     Plaintiff will seek permission pursuant to Labor Code section 2699, *et. seq.*, to pursue similar claims as those set forth in this Complaint against Defendants as a Private Attorney General on behalf of herself and other similarly situated employees. Plaintiff will also provided requisite notice of this Private Attorney General Act ("PAGA") action to Defendants.

## PARTIES

7.     Plaintiff JOELLE STALLSMITH ("Plaintiff") is over the age of eighteen (18) and is now and/or at all times mentioned in this Complaint was a resident of the State of California.

8.     Plaintiff is informed and believes and thereon alleges that Defendant RENAE LINDER ("Ms. Linder") is an individual over the age of eighteen (18) and is now and/or at all times mentioned in this Complaint was a resident of the State of California.

9.     Plaintiff is informed and believes and thereon alleges that Defendant DAVID LINDER, M.D. ("Dr. Linder") is an individual over the age of eighteen (18) and is now and/or at all times mentioned in this Complaint was a resident of the State of California.

10.     Plaintiff is informed and believes, and thereon alleges, that Defendant LINDER PSYCHIATRIC GROUP, INC. ("LPG") is now and/or at all times mentioned in this Complaint was a California corporation and the owner and operator of an industry, business, and/or facility licensed to do business and actually doing business in the State of California.

11.     Defendant DOES 1 through 100 are persons and entities whose true names and identities are presently unknown to Plaintiff, and who therefore are sued by such fictitious names. Plaintiff is informed and believes, and on that basis alleges, that each of the fictitiously named Defendants is responsible in some manner for the matters alleged herein, and is jointly and severally liable to Plaintiff. Plaintiffs will seek leave of court to amend this

1  Complaint to state the true names and capacities of such fictitiously named Defendants when
2  ascertained.

3        12.     At all times mentioned herein, each Defendant was the agent or employee of
4  each of the other Defendants and was acting within the course and scope of such agency or
5  employment. The Defendants are jointly and severally liable to Plaintiffs.

6        13.     Defendants, and each of them, are now and/or at all times mentioned in this
7  Complaint were members of and/or engaged in a joint employment, joint venture, partnership
8  and common enterprise, and were acting within the course and scope of, and in pursuance of
9  said joint employment, joint venture, partnership and common enterprise.

10        14.     Defendants, and each of them, are now and/or at all times mentioned in this
11  Complaint approved, ratified, acquiesced, aided or abetted the acts and omissions alleged in
12  this Complaint.

13        15.     Defendants proximately caused Plaintiffs to be subjected to the unlawful
14  practices, wrongs, complaints, injuries and/or damages alleged in this Complaint.

## ALTER EGO ALLEGATIONS

15
16        16.     Plaintiff is informed and believes and thereon alleges that Dr. Linder and Ms.
17  Linder were at all times mentioned in this Complaint the owners of the majority, if not all, of
18  the shares of stock of LPG.

19        17.     Plaintiff is informed and believes and thereon alleges that at all times herein
20  mentioned there existed a unity of ownership and interest between LPG, Dr. Linder, and Ms.
21  Linder, such that any individuality and separateness between these three named defendants
22  has ceased and the corporate defendant is the alter ego of Dr. Linder and Ms. Linder.

23        18.     Plaintiff is informed and believes and thereon alleges that Dr. Linder and Ms.
24  Linder funneled LPG's funds into their personal accounts, their family's personal accounts,
25  and their associates' personal accounts, leaving LPG undercapitalized.

26        19.     Plaintiff is informed and believes and thereon alleges that LPG operated as the
27  alter ego of Dr. Linder and Ms. Linder in that the defendant corporation's business activities
28  were carried out without the holding of directors' or shareholders meetings, no records or

1  minutes of any corporate proceedings were maintained, and LPG entered into personal
2  transactions with investments without the approval of other corporate officers.

3        20.      Plaintiff is informed and believes and thereon alleges that, for these reasons, in
4  addition to others that will be discovered through the course of litigation, this demonstrates
5  Dr. Linder's and Ms. Linder's intent to abuse the corporate form.

6        21.      Identification of further evidence of Dr. Linder's and Ms. Linder's disregard
7  of the corporate entity cannot be given with more particularity at this time because all records
8  thereof are possessed by Defendants.  Leave of Court will be requested to amend this
9  Complaint when the nature of this evidence has been determined.

## CLASS ALLEGATIONS

11       22.      Plaintiff brings this action, on behalf of herself and all others similarly
12 situated, as a class action pursuant to California Code of Civil Procedure section 382.  The
13 class that Plaintiff seeks to represent is composed of and defined as follows:

> All Clinician/Providers who were, or continue to be, employed by
> Defendants and paid by Defendants according to a piece rate system, within
> four years prior to the filing of this Complaint and up to the present date,
> who:
>
> (1)    Were not paid minimum wages for all hours worked;
>
> (2)    Were not paid overtime for hours worked in excess of eight (8) in a
>        day or forty (40) in a week;
>
> (3)    Were not provided meal breaks in accordance with California Labor
>        Code section 226.7 and the Industrial Welfare Commission Wage
>        Orders;
>
> (4)    Were not provided rest breaks in accordance with California Labor
>        Code section 226.7 and the Industrial Welfare Commission Wage
>        Orders;
>
> (5)    Were not provided proper wage statements in compliance with
>        California Labor Code section 226;
>
> (6)    Were not paid all wages due to them at the time of termination or
>        separation;
>
> (7)    Executed written employment agreements with Defendants, which
>        Defendants routinely materially breached.

23.     This action has been brought and may be properly maintained as a class action, pursuant to the provisions of California Code of Civil Procedure section 382, because there is a well-defined community of interests in the litigation and the proposed class is easily ascertainable.

(a)     Numerosity:  The Plaintiff Class is so numerous that the individual joinder of all members is impracticable under the circumstances of this case.  While the exact number of class members is unknown to Plaintiff at this time, based upon the number of employees Defendant LPG has employed throughout the State of California during the applicable statute of limitations, Plaintiff is informed and believes that as many as fifty (50) – seventy (75) members were subjected to the practices outlined in this Complaint.  As such, joinder of all members of the Plaintiff Class is not practicable.

(b)     Common Questions Predominate:     Common questions of law and fact exist as to all members of the Plaintiff Class and predominate over questions which affect only individual members of the class.  These common questions of law and fact include, without limitation, the following:

(1)     Whether Defendants had a policy of a piece rate pay system;

(2)     Whether, as a result of Defendants' policy of paying Plaintiff and all Plaintiff class members on a piece rate pay system, Defendants failed to pay employees minimum wages for all hours worked;

(3)     Whether, as a result of Defendants' policy of a piece rate pay system, Defendants failed to pay employees overtime wages for hours worked in excess of eight (8) hours per day or forty (40) hours per week;

(4)     Whether Defendants are able to average pay during an employee's pay period over hours worked to satisfy its minimum wage obligations to employees;

(5)     Whether Defendants had a policy of scheduling patients such that employees were denied meal breaks;

(6)     Whether Defendants had a policy of scheduling patients such that employees were denied rest breaks;

1         (7)     Whether Defendants had a policy of not paying employees for time

2 spent preparing reports;

3         (8)     Whether Defendants' employees were paid any compensation for time

4 spent preparing reports;

5         (9)     Whether Defendants had a policy of not paying employees for time

6 spent waiting to see patients;

7         (10)    Whether Defendants' employees were paid any compensation for time

8 spent waiting to see patients;

9         (11)    Whether Defendants had a policy of not paying employees for time

10 spent on controlled standby;

11         (12)    Whether Defendants' employees were paid any compensation for time

12 spent on controlled standby;

13         (13)    Whether Defendants' employees were given paystubs that complied

14 with California Labor Code section 226;

15         (14)    Whether Plaintiffs received all wages, due and owing, at the time of

16 their termination;

17         (15)    Whether Defendants routinely materially breached the written

18 employment agreements Defendants executed with Plaintiffs.

19    (c)    Typicality:    Plaintiff's claims are typical of the claims of the members of

20 the Plaintiff Class. They also sustained damages arising out of Defendants' common course

21 of conduct in violation of the law as complained of herein. Plaintiff, and all members of the

22 Plaintiff Class worked as Clinician/Providers who were paid under a piece rate system that

23 only compensated said employees for time spent performing patient appointments. As a

24 result, Plaintiff and similarly situated employees were not paid any compensation for the time

25 spent preparing reports, waiting for patients, or time spent on controlled standby, even when

26 such time resulted in them working overtime. Thus, each employee within the class has the

27 same claim for unpaid minimum wages and unpaid overtime. Additionally Plaintiff and

28 similarly situated employees were all subject to Defendants' policy of scheduling patients

during meal and rest breaks. Moreover, Plaintiff, and all members of the Plaintiff Class, executed written employment agreements that required that Defendant afford Plaintiff, and all members of the Plaintiff Class, payment for a minimum of 35 hours or work. However, Defendants failed to comply with said contractual obligation and, therefore, Plaintiff and all similarly situated employees have the same claim for breach of the parties' written agreement.

(d) <u>Adequacy:</u>  Plaintiff will fairly and adequately protect the interests of the members of the Plaintiff Class. Plaintiff resides in California, worked for Defendants in California, and is an adequate representative of the Plaintiff Class as she has no interests that are adverse to those of absent class members. Additionally, Plaintiff has retained counsel who has substantial experience in class action civil litigation and wage and hour matters.

(e) <u>Superiority:</u>  A class action is superior to other available means for the fair and efficient adjudication of the controversy since individual joinder of all members of the class is impracticable. Class action treatment will permit a larger number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Further, as damages suffered by each individual member of the class may be relatively small, the expenses and burden of the individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. The cost to the court system of adjudication of such individualized litigation would be substantial. Individualized litigation would also present the potential for inconsistent or contradictory judgments.

24.    Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## FACTUAL ALLEGATIONS

25. Plaintiff incorporates by reference and re-alleges paragraphs 1 through 24 as though fully set forth herein.

26. Plaintiff and the Plaintiff Class worked for Defendants as Clinician/Providers pursuant to a written employment agreement.

27. Defendants paid Plaintiff and the Plaintiff Class according to a piece rate system based on the number of patients they treated. Plaintiff and the Plaintiff Class were paid approximately $30.00-$33.00 per patient visit despite the fact that the parties' written employment agreement required Defendants to pay Plaintiff and the Plaintiff Class the specified contractual rate for each "worked hour."

28. Defendants had a policy requiring Plaintiff and the Plaintiff Class to be available to work a minimum number of hours per week. Plaintiff and the Plaintiff Class regularly worked at least the minimum hours of work per week called for by Defendants' policy; however, Plaintiff and the Plaintiff Class were only compensated for the time she spent seeing patients rather than the actual hours that she worked. Plaintiff and the Plaintiff Class were not compensated for time spent preparing reports, the time between patient visits, or the time spent when patients failed to show for their appointments unless and until the patients paid for the missed appointment. Patients would regularly be scheduled at varying times of the day requiring Plaintiff and the Plaintiff Class to be working and/or present on Defendants' premises in excess of eight (8) hours per day. Plaintiff and the Plaintiff Class were also required to be available on a moments notice during their regularly scheduled shift, thereby subjecting them to controlled stand-by time.

29. As a result of Defendants' policy to only pay Plaintiff and the Plaintiff Class for time spent seeing patients, Plaintiff and the Plaintiff Class were denied minimum wages for hours worked when she did not see any patients as well as overtime wages when she worked more than eight (8) hours in a day or forty (40) hours in a week. In addition, Defendants' policy to only pay Plaintiff and the Plaintiff Class for time spent seeing patients breached the written employment agreements with Plaintiff and the Plaintiff Class because Plaintiff failed to pay said parties for each "worked hour."

---

30. Because Defendants paid Plaintiff and the Plaintiff Class on a piece rate system based on patients seen, Defendants paid Plaintiff and the Plaintiff Class below the State minimum wage for all hours they actually worked.

31. Based on Defendants' scheduling policies, Plaintiff and the Plaintiff Class were regularly denied the opportunity to take meal and rest breaks.

32. Plaintiff's and the Plaintiff Class' pay stubs do not accurately reflect the amount of hours that she worked; the rate of pay for the time spent working while not seeing patients; or the missed meal and rest periods. As a result, Plaintiff and the Plaintiff Class are unable to determine the exact amount of wages owed for all hours worked, including wages owed for downtime activities.

33. Plaintiff and the Plaintiff Class were not compensated for all wages at the end of her employment, because Defendants did not pay Plaintiff and the Plaintiff Class minimum wages, compensate Plaintiff and the Plaintiff Class for the time she spent not seeing patients, compensate Plaintiff and the Plaintiff class for overtime hours worked, compensate Plaintiff and the Plaintiff Class pursuant to the terms of the written employment agreements or compensate Plaintiff and the Plaintiff Class for missed meal and rest periods. Defendants did not pay this time at the time of Plaintiff's or the Plaintiff Class' termination or separation.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### FAILURE TO PAY MINIMUM WAGES (LABOR CODE § 1194)
### (As to all Defendants)

34. Plaintiff and the Plaintiff Class incorporate by reference and re-alleges paragraphs 1 through 33 as though fully set forth herein.

35. For the four (4) years preceding the filing of this Complaint, Defendants were required to compensate Plaintiff and the Plaintiff Class the State's minimum wage of $8.00 per hour and $9.00 per hour (after July 1, 2014) for all time worked from until the time of termination of employment.

36.    Plaintiff and the Plaintiff Class spent several hours a day performing work on behalf of Defendants that did not involve seeing patients. This time spent was compensable as actual hours worked and/or time to which Plaintiff and the Plaintiff Class were subject to the controlled stand-by by Defendants. However, Defendants' policy of a piece rate pay system paid Plaintiff and the Plaintiff Class based on patients seen, and, therefore, failed to pay Plaintiff and the Plaintiff Class for non-patient time activities performed for the benefit of Defendants and/or for the time which Plaintiff and the Plaintiff Class were subject to controlled stand-by time. For this reason, Defendants failed to meet the State's minimum wage of $8.00/$9.00 per hour.

37.    California law does not permit averaging of payments during a pay period over hours worked in order to meet an employer's minimum wage obligation. *Armenta v, Osmose* (2006) 135 Cal. App.4th 314, 324 (". . . the FLSA model of averaging all hours worked 'in any work' to compute an employer's minimum wage obligation is inappropriate. The minimum wage obligation applies to each hour worked by respondents for which they were not paid.") Therefore, Defendants failed to pay Plaintiff and the Plaintiff Class minimum wages for all time worked.

38.    Plaintiff and the Plaintiff Class were not exempt from the State's Minimum Wage Orders. Defendants were aware of their obligation to pay the minimum wages but failed to do so.

39.    As a proximate result of Defendants' conduct, Plaintiff and the Plaintiff Class have been damaged as stated in the section below entitled "DAMAGES," which is incorporated herein to the extent pertinent as if set forth here in full.

### SECOND CAUSE OF ACTION
### FAILURE TO PAY OVERTIME WAGES (LABOR CODE § 1194)
#### (As to all Defendants)

40.    Plaintiff herein incorporates by reference paragraphs 1 through 39 above as though fully set forth herein.

41.    Plaintiff and the Plaintiff Class members are entitled to overtime compensation for overtime work performed for Defendants, in an amount according to proof.

Pursuant to Labor Code section 1194, Plaintiff and the Plaintiff Class seek the payment of all overtime compensation which they earned and accrued after four (4) years prior to filing of this Complaint, according to proof.

42.    Plaintiff and the Plaintiff Class were not exempt from the State's Overtime Wage Orders.  Defendants were aware of their obligation to pay the minimum wages but failed to do so.

43.    As a proximate result of Defendants' conduct, Plaintiff and the Plaintiff Class have been damaged as stated in the section below entitled "DAMAGES," which is incorporated herein to the extent pertinent as if set forth here in full.

### THIRD CAUSE OF ACTION
### WAGE STATEMENT VIOLATIONS
### (As to all Defendants)

44.    Plaintiff herein incorporate by reference paragraphs 1 through 43 above as though fully set forth herein.

45.    According to Labor Code section 226(a), an employer must provide an itemized statement to an employee, semimonthly or at the time of each payment of wages, showing:

> *(1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.  The deductions made from payment of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement and the record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California.*

46. Plaintiff and the Plaintiff Class allege that Defendants intentionally and knowingly failed to provide itemized statements or failed to provide accurate and complete itemized statements showing the requirements set forth in Labor Code section 226(a). Defendants did not itemize all hours worked or the correct corresponding rates of pay. As a result, Plaintiff and the Plaintiff Class were unable to determine the amount of unpaid wages and overtime owed to them.

47. Additionally, Plaintiff and the Plaintiff Class allege they suffered injury as a result of: (1) Defendants' failure provide a wage statement; or (2) Defendants' failure to provide accurate and complete information as required by any one or more of items (1) to (9), inclusive, of Labor Code section 226, subdivision (a), and Plaintiff and the Plaintiff Class cannot promptly and easily determine (*i.e.* a reasonable person in Plaintiffs position would not be able to readily ascertain the information without reference to other documents or information) from the wage statement alone, one or more of the following:

   a. The amount of the gross wages or net wages paid to the employee during the pay period or any of the other information required to be provided on the itemized wage statement pursuant to items (2) to (4), inclusive, (6), and (9) of section 226, subdivision (a); or

   b. Which deductions the employer made from gross wages to determine the net wages paid to the employee during the pay period; or

   c. The name and address of the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Labor Code section 1682, the name and address of the legal entity that secured the services of the employer during the pay period.

   d. The name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number.

48.     As a proximate cause of Defendants' failure to provide accurate statements, Plaintiff and the Plaintiff Class were damaged as stated in the section below entitled "DAMAGES," which is incorporated here to the extent pertinent as if set forth here in full.

### FOURTH CAUSE OF ACTION
### WAITING TIME PENALTIES
### (As to all Defendants)

49.     Plaintiff and the Plaintiff Class herein incorporate by reference paragraphs 1 through 48 above as though fully set forth herein.

50.     An employer must pay an employee who is terminated all unpaid wages immediately upon termination.  Labor Code § 201.

51.     An employer must pay an employee who resigns all unpaid wages within 72 hours of their resignation.  Labor Code § 202.

52.     Plaintiff and the Plaintiff Class did not receive all wages, including minimum wages, overtime, or missed meal and rest premiums, at their termination.

53.     An employer who willfully fails to pay an employee wages in accordance with Labor Code sections 201 and/or 202 must pay the employee a waiting time penalty of up to 30 days.  Labor Code § 203.

54.     Defendants knew of their obligation to pay Plaintiff and the Plaintiff Class minimum wages, overtime compensation, and meal and rest period premiums because Defendants had knowledge that Plaintiff and the Plaintiff Class were working more hours than those they were being compensated for and knew that Plaintiff and the Plaintiff Class were being denied meal and rest periods.  Thus, Defendants' failure to pay minimum wages, overtime compensation, and meal and rest period premiums was in complete disregard of their obligations.  Such conduct shows Defendants' knowledge of their obligation to pay minimum wages, overtime wages, and meal and rest period premiums upon termination and willful refusal.

55.     As a proximate result of Defendants' conduct, Plaintiff and the Plaintiff Class have been damaged and deprived of their wages and seek their daily rate of pay multiplied by 30 days for Defendants' failure to pay all wages due.

---

## FIFTH CAUSE OF ACTION
## UNFAIR COMPETITION
### (As to all Defendants)

56.     Plaintiff and the Plaintiff Class herein incorporate by reference paragraphs 1 through 65 above as though fully set forth herein.

57.     Unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with section 17500) of Part 3 of Division 7 of the Business and Professions Code. Business and Professions Code § 17200.

58.     Plaintiff and the Plaintiff Class are informed and believe and thereon allege that they were not paid minimum wages, overtime wages, or meal and rest premiums in violation of Labor Code sections 226.7 and 1194 and California Minimum Wage Order-2007.

59.     Plaintiff and the Plaintiff Class are also informed and believe and thereon allege that such actions and/or conduct constitute a violation of the California Unfair Competition Law ("UCL") (Business and Professions Code 17200 *et seq.*) pursuant to *Cortez v. Purolator Air Filtration Products Co.*(2000) 23 Cal. 4th 163.

60.     As a direct and legal result of Defendants' conduct, as alleged herein, pursuant to the UCL (including B&P Code section 17203), Plaintiff and the Plaintiff Class are entitled to restitution for the four (4) years from the filing of this Complaint, as a result of Defendants' unfair business practices, including, but not limited to, disgorgement of all unpaid wages, including minimum wages and reimbursement expenses, interest and penalties pursuant to Business and Professions Code sections 17203, 17208, Labor Code sections 2802 and 1194, all in an amount as yet unascertained but subject to proof at trial.

## SIXTH CAUSE OF ACTION
## VIOLATION OF LABOR CODE § 558
### (As to all Defendants)

61.     Plaintiff and the Plaintiff Class incorporate by reference and re-alleges paragraphs 1 through 60 as though fully set forth herein.

62. Labor Code section 558 provides that, "[a]ny employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows: . . . For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. . . . For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. . . . Wages recovered pursuant to this section shall be paid to the affected employee."

63. Labor Code sections 516 and 517 (providing the Industrial Welfare Commission authority to set additional regulations through the wage orders) are within the same chapter as section 558.

64. As a direct and proximate result of Defendants' conduct, which was at the direction of Dr. Linder and Ms. Linder, Labor Code sections 516 and 517 have been violated throughout the duration of Plaintiff's and the Plaintiff Class' employment. Plaintiff and the Plaintiff Class are, therefore, entitled to, and seek, penalties and wages pursuant to Labor Code section 558. See *Thurman v. Bayshore Transit Management, Inc.*, 203 Cal.App.4th 1112, 1132-1134 (2012); MW Order-2007.

### SEVENTH CAUSE OF ACTION
### MEAL AND REST PERIOD VIOLATIONS (LABOR CODE §226.7)
#### (As to all Defendants)

65. Plaintiff and the Plaintiff Class incorporate by reference and re-alleges paragraphs 1 through 64 as though fully set forth herein.

66. Plaintiff and the Plaintiff Class are entitled to premium pay compensation for each day that Defendants failed to properly provide one or more rest periods, or failed to provide premium pay compensation in lieu thereof, in an amount according to proof. Pursuant to Labor Code section 226.7, Plaintiff and the Plaintiff Class seek the payment of all rest period

compensation which they are owed beginning four (4) years prior to filing of this complaint, according to proof.

67. Plaintiff and the Plaintiff Class are entitled to premium pay compensation for each day that Defendants failed to properly provide one or more meal periods, or failed to provide premium pay compensation in lieu thereof, in an amount according to proof. Pursuant to Labor Code sections 226.7 and 512, Plaintiff and the Plaintiff Class seek the payment of all meal period compensation which they are owed beginning four (4) years prior to filing of this complaint, according to proof.

68. As a proximate cause of Defendants' failure to provide accurate statements, Plaintiff and the Plaintiff Class were damaged as stated in the section below entitled "DAMAGES," which is incorporated here to the extent pertinent as if set forth here in full.

<u>**EIGHTH CAUSE OF ACTION**</u>
<u>**BREACH OF WRITTEN CONTRACT**</u>
<u>**(As to all Defendants)**</u>

69. Plaintiff and the Plaintiff Class incorporate by reference and re-alleges paragraphs 1 through 68 as though fully set forth herein.

70. Plaintiff and the Plaintiff Class executed written employment agreements with Defendants. A true and correct copy of Plaintiff's employment agreement with Defendants is attached hereto as Exhibit A and the terms of said agreement are incorporated herein by reference.

71. Plaintiff alleges that the written employment agreement attached hereto as Exhibit A is typical of employment agreements executed by all members of the Plaintiff Class.

72. The written employments provide that each Clinician/Provider would be afforded a minimum of 35 hours of work per week and that Defendants would pay each Clinician/Provider a specified rate of pay "per worked hour per pay period."

73. Defendants, however, breached the written employment agreements by, *inter alia*, failing to afford a minimum of 35 hours of work per week (i.e. providing 35 hours of work per week with patients), failing to pay the contractually specified rate of pay to Plaintiff and the

Plaintiff Class for each "worked hour per pay period," and failing to afford Plaintiff and the Plaintiff Class employee benefits.

74. The written employment agreements each contain an identical provision providing for payment of $20,000 as liquidated damages, and not a penalty, for breach of the agreement by either party.

75. As a proximate result of Defendants' breaches of the written employment agreements, Plaintiff and the Plaintiff Class have suffered damages in an amount to be proven at trial but alleged to be in excess of the jurisdictional minimum of this Court.

76. The written employment agreements further provide for the recovery of attorneys' fees to the prevailing party in any action brought to enforce or interpret the written agreement. Plaintiff and the Plaintiff Class have retained the Turner Law Group and The Law Office of Brian Crone in order to enforce and/or interpret the written agreement.

## DAMAGES

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1. A jury trial; and
2. As to the First Cause of Action:
   a. All wages earned and owing;
   b. Interest for the wages due pursuant to Labor Code section 1194;
   c. For reasonable attorney's fees and costs incurred pursuant to Labor Code section 1194;
   d. Liquidated damages pursuant to Labor Code section 1194.2;
3. As to the Second Cause of Action:
   a. All wages earned and owing;
   b. Interest for the wages due pursuant to Labor Code section 1194;
   c. For reasonable attorney's fees and costs incurred pursuant to Labor Code section 1194;
4. As to the Third Cause of Action:

1      a. Penalties as provided for in Labor Code section 226, including the greater

2      of all actual damages or fifty dollars ($50) for the initial pay period in

3      which the violation occurred and one hundred dollars ($100) per employee

4      for each violation in the subsequent pay periods, but not to exceed four

5      thousand dollars ($4,000);

6      b. For reasonable attorney's fees and costs incurred pursuant to Labor Code

7      section 226(e);

8  5.   <u>As to the Fourth Cause of Action</u>:

9      a. All waiting time penalties due and owing;

10     b. Interest thereon;

11     c. For reasonable attorney's fees and costs incurred;

12  6.   <u>As to the Sixth Cause of Action</u>:

13     a. Fifty dollars ($50) per pay period for the initial violation and one hundred

14     dollars ($100) per pay period for each subsequent violation where Plaintiff

15     was underpaid in addition to an amount sufficient to recover underpaid

16     wages;

17  7.   <u>As to the Seventh Cause of Action</u>:

18     a. All wages earned and owing;

19     b. Interest for the wages due pursuant to Labor Code section 218.6;

20     c. For reasonable attorney's fees and costs incurred pursuant to Labor Code

21     section 218.5;

22  8.   <u>As to the Eighth Cause of Action</u>:

23     a. All compensatory damages in an amount according to proof at trial;

24     b. Liquidated damages in the sum of $20,000 for each proven breach of the

25     written employment agreement;

26     c. Interest according to proof; and

27     d. For reasonable attorney's fees and costs pursuant to California Code of

28     Civil Procedure section 1717;

9.  For such other and further relief this Court may deem just and proper, including, but not limited to:

    a.  Wages as proved at trial;

    b.  Reasonable attorney's fees and costs as provided by law; and

    c.  Interest

Dated: November 18, 2014

TURNER LAW GROUP/THE LAW
OFFICE OF BRIAN CRONE

ERICK TURNER/BRIAN CRONE

**PLAINTIFF AND THE PLAINTIFF CLASS HEREBY REQUESTS A TRIAL BY JURY**

Dated: November 18, 2014

TURNER LAW GROUP/THE LAW
OFFICE OF BRIAN CRONE

ERICK TURNER/BRIAN CRONE

# EXHIBIT A

# Linder Psychiatric Group Inc.

193 Blue Ravine Road, Suite 170
Folsom, CA 95630
Ph: (916)608-0714 Fax: (916) 608-0717

970 Reserve Drive, Suite 205
Roseville, CA 95678
Ph: (916)780-1070 Fax: (916) 780-1199

Website: www.echildpsychiatry.com
Email: admin@echildpsychiatry.com

## PIECE MEAL EMPLOYMENT AGREEMENT

This Agreement is made as of the day of _October 29th_, 2012 by and between Linder Psychiatric Group, Inc., a Private Psychiatric/Psychological Group, (the "Group"), and _Joelle N. Stallsmith_ ("Clinician/Provider").

**RECITALS**
A. Group is a professional psychological/psychiatric group that provides outpatient services to various insurance company health plan individuals, EAP, and fee for service individuals.

This Agreement will become effective on the date first signed by both parties and will continue in effect until terminated as provided in this Agreement, for a period of at least 3 years upon completion of the credentialing of the Clinician/Provider, renewable thereafter at the option of both parties.

**1.0 Standards of Practice.** The Clinician/Provider shall provide services under this Agreement in conformity with the professional standards and practices set by the State Licensing Board, observed by the Group, and prevailing in the community in which the services are rendered. The Clinician/Provider providing services under Health Plan Contracts shall be appropriately licensed, credentialed, and insured as required by State and Federal Laws.

**1.2 Information and Reports.** The Clinician/Provider shall promptly furnish Group with such information and reports as Group may from time to time request, concerning services that the Clinician/Provider furnishes to Subscribers under this Agreement.

**Proper Invoice and Documentation.** If an invoice is improper or does not meet the contract requirements, then the Group will return the documentation/progress note, and/or super bill to the Clinician/Provider. An invoice and or progress note will be returned as improper if it fails to meet the QA criteria and your contractual obligations. If the information is not received when requested or the information does not adequately support the medical necessity for the item, payment may be denied and or withheld until corrected.

Please remember, in the event of either a prepayment or post payment claim review that the Group will only pay for services that are documented properly. Clinician's/Provider's are encouraged to follow all Medicare and commercial carrier documentation regulations in order to avoid claim denials and overpayment assessments. If overpayment assessments occur they will be deducted in the next pay period.

**1.3 Utilization Review and Quality Assurance.** The Clinician/Provider shall participate in and comply with the utilization review and quality assurance programs as established by the Joint Commission of Hospital Accreditation Organization (JCHO) and the Group.

**1.4 Credentialing and Peer review.** The Group establishes panels of mental health service Clinicians/Providers, to provide services to Subscribers pursuant to Health Plan Contracts. The Clinician/Provider shall participate in and comply with the credentialing and peer review programs as established by the Group. The Group will bear the entire financial cost and assist in credentialing the Clinician/Provider with various insurance companies (i.e., Blue Shield of California, Cigna, MHN, PacifiCare, UBH or other) at no cost to the Clinician/Provider to enable the Clinician/Provider provide services to Group's clients and subscribers from those insurance companies at a rate agreed between the Group and the Clinician/Provider. In return the Clinician/Provider shall irrevocably commit to work with Group to provide services to their clients throughout the term specified herein.

**1.5 Group Participation.** The Clinician/Provider shall comply with such policies and procedures as established by the Group and furnished to the Clinician/Provider in writing. Please review the Policy and Procedure Manual for the Group.

**1.6 Insurance.** The Clinician/Provider shall maintain his/her own professional malpractice and general liability insurance as specified below in Article 1, Section 1.b of this agreement. The Clinician/Provider shall immediately notify Group of the termination of or any material reduction in the Clinician's/Provider's professional or general liability insurance. If any policy of professional or general liability insurance held by the Clinician/Provider is a claim made policy, upon termination thereof the Clinician/Provider shall procure continuing coverage in amounts no less than those set forth in Article 1, Section: 1.b, insuring the Clinician/Provider against claims made after the termination.

**1.7 Indemnification:** The Clinician/Provider hereby agrees to indemnify and hold harmless the Group against any and all liability, claims, suits, losses, costs and legal fees caused by, arising out of, or resulting from any negligent act or omission of the Clinician/ Provider in the performance and/or failure to perform his/her duties within the contracts including the negligent acts or omission of any Clinician/Provider under this Agreement.

**1.8 Disputes.** The Clinician/Provider shall cooperate with the Group and Insurance Health Plans in the investigation and resolution of any complaints, disputes or grievances by Subscribers. The Clinician/Provider shall be required to submit to any binding adjudication of such disputes. In the event of any dispute concerning this Agreement, the parties involved shall meet and confer in an effort to resolve the dispute.

**2.0 Discrimination.** The Clinician/Provider shall adhere to all State and Federal Laws regarding discrimination. She or he shall not discriminate in provision of services to any clients or any person affiliated with the Group on grounds of their race, ethnicity, age, religion, sex, sexual orientation, or disability. Engaging in any such discriminatory behavior will result in disciplinary action, and/or termination of the Clinician's/Provider's contract and/or legal action.

**AGREEMENT**

## Article 1 - Clinician's/Provider's Qualifications:

**Section: 1.a License and Qualifications.** The Clinician/Provider must be licensed, in good standing and she or he shall maintain an unrestricted, active license to practice her or his discipline in the State of California. The Clinician/Provider must inform the Group of any changes in the status of his/her license immediately as changes occur. The Clinician/Provider must hold a valid (unexpired) DEA Certificate if he/she prescribes medications to patients. The Clinician/Provider must also disclose to the Group all information pertaining to any pending and/or future malpractice claims/licensing and/or legal action pertaining to him/her.

**Section: 1.b Liability Insurance.** The Clinician/Provider shall maintain a policy of professional and general liability insurance, issued by an insurer qualified to do business in the State of California, insuring the Clinician/Provider against claims professional negligence, bodily injury or death, and property damage or loss, in such amounts as determined by the Group. Unless otherwise notified by the Group, the amount of liability insurance shall be no less than $1,000,000 (one million) per claim and $3,000,000 (Three Million Dollars) per aggregate.

## Article 2 - Contracting:

**Section: 2.a Appointment.** Clinician/Provider is hereby appointed as a "Participating Clinician/Provider," and shall provide services in accordance with this Agreement, and in accordance with the Group's Clinician/Provider Network program as appropriate.

**Section: 2.b Status of Employee.** Employee enters into this Agreement, and will remain through out the term of the Agreement as an employee. Employee agrees that he/she is not and will not become a partner, agent, or principal of the Group while this Agreement is in effect.

**Section: 2.c Method of Performing Services.** Employee will conform to the standards of the Group and the community for performing services and required documentation. QA forms with the requirements are available in the Group's Policy and Procedure binder. All employees of the Group are required to read and abide by the Group's Policies and Procedures.

**Section: 2.d Designation.** The Group may from time to time enter into Health Plan Contracts, and may (but shall not be obliged to), designate the Clinician/Provider, by written notice, to provide professional services pursuant to any such Health Plan Contract. Even though Group designates Clinician/Provider to provide professional services pursuant to any Health Plan Contract, Group is not obligated to refer to the Clinician/Provider professional services pursuant to any Health Plan Contract. Also Group is not obligated to refer to Clinician/Provider any specified number of Subscribers, a certain percentage of Subscribers, or any Subscribers at all, under any given Health Plan Contract.

**Section: 2.e Patient relationships.** All Subscribers shall be patients of the Group, and the Clinician's/Provider's relationship with such patients shall be solely as an Employee of the Group. All Subscribers designated to Clinician/Provider pursuant to this Agreement shall remain patients of the Group even after termination of this Agreement. Instigation or influence to move the Group's patients to a private practice shall constitute a breach of this Agreement and will result in monetary compensation for the loss to the Group. The Clinician/Provider, however, may continue to render professional services to any such Subscriber, if he/she continues to meet the standards of the Group as defined in this contract and are willing to enter into a Billing Services Agreement with the Group with respect to such Subscribers.

**Section: 2.f Provider Services.** If the Clinician/Provider is designated to provide services under a Health Plan Contract as contained in this Agreement, he/she shall provide to the Subscribers of the Health Plan Contract such services, within his/her customary scope of practice, as may be required by the Health Plan Contract. The Clinician/Provider must return the patient records for those Subscribers of Health Plan Contracts that he/she may have cared for pursuant to this Agreement as Proprietary Information of the Group upon termination of this Agreement between Clinician/Provider.

**Section: 2.g Contents of Notice.** The notice required by Article 2, Section 2.d shall contain a copy of the Health Plan Contract, or a summary of its material terms. If the Clinician/Provider believes the terms of the contract are materially inconsistent with this Agreement, or that they impose on the Clinician/Provider any additional, material obligations, then the Clinician/Provider shall have fifteen (15) days from delivery of the notice within which to reject the contract. If the Clinician/Provider does not reject the contract he/she shall be bound to provide services pursuant to the Health Plan Contract.

### Article 3 - Provider's General Obligations:

**Section: 3.a Health Plan Contracts.** The Clinician/Provider shall comply with the provisions of all Health Plan contracts that Group enters into, including provisions relating to the referral of patients to Clinicians/Providers contracting with such Health Plans. The Clinician/Provider shall not discriminate against any subscriber in access to or scheduling or promptness of services, or in any other way.

**Section: 3.b Capacity.** The Clinician/Provider shall inform Group promptly of any material changes in his/her capacity to accept new patients under this Agreement, and shall give Group at least thirty (30) days advance notice of her or his desire to cease accepting additional patients under this Agreement.

**Section: 3.c Panel Listing.** The Group may list the Clinician's/Provider's name, address, telephone number and type of practice in rosters and publicity materials, together with such other information as the Group deems relevant and helpful to the recipients of the roster. The Clinician/Provider shall promptly notify the Group of any changes or corrections that may be required to be made to the roster.

**Section: 3.d Coverage.** Subscribers are to be seen only by participating Clinicians/Providers with the exception of coverage for temporary leave of absence as designated by the Group. If the Clinician/Provider becomes temporarily unavailable for appointments with his/her existing patient(s), such as when leaving on vacation or is temporarily unavailable for any other reason, the Clinician/Provider MUST find another qualified Clinician/Provider within the Group to cover (be available for appointments with his/her existing patients). The Substitute Clinician/Provider would be compensated for patients seen during the said period of coverage and not the contracted Clinician/Provider. The Substitute Clinician/Provider must be licensed to practice by the State Licensing Board and be in good standing to practice their profession.

**Section: 3.e Availability.** During the term of this agreement, the Clinician/Provider shall maintain twenty-four (24) hour on-call coverage and availability of seven (7) days per week. "On-call coverage" is defined as Clinician/Provider or authorized back-up Clinician/Provider availability to Subscribers within sixty (60) minutes of a call from a Subscriber.

**Section: 3.f Required Hours of Work. Time and Place of Performing Work.** Due to the sensitive nature of the services to be performed in this Agreement, the Clinician/Provider will perform the services under this Agreement on Client's premises during the Group's regular business hours between the hours of 8:00 A.M. and 9:00 P.M each weekday, and some weekend days if agreed and arranged between Group and Clinician/Provider.

The Group requires the Clinician/Provider to work for a minimum of 35 hours per week from the date this Agreement was first signed by both parties and will continue in effect until terminated as provided in this Agreement, for a period of at least 3 years upon completion of the credentialing of the Clinician/Provider unless the Clinician/Provider and the Group agree otherwise. The Group requires cooperation of Clinician/Provider with scheduling and signing contracts so that the Clinician's/Provider's schedule will become full in a reasonable time frame.

## Article 4 – Compensation
**Section: 4.a Compensation.** In consideration of the services provided hereunder, the Group shall pay the Clinician/Provider the compensation set forth in Addendum A. The Group may amend Addendum A from time to time after informing the Clinician/Provider to specify the rates of compensation payable under specified Health Plan Contracts.

**Section: 4.b Benefits.** Clinician/Provider shall be entitled to such employee benefits as specified within the Group's written employment policies.

## Article 5- No Exclusivity
The Clinician/Provider may deal directly with Health Plans, may enter into contracts to provide health care services through other organizations, may hold stock in such organization, and may vote his or her stock. The Clinician/Provider shall not participate as an officer, director, employee, consultant or in any other capacity in the direction, management or marketing of any other organization/association of health care professionals that contracts to provide mental health services, or arranges for or facilitates contracts between Health services, or arranges for or facilitates contracts between Health Plans and Clinician/Provider of mental health services at the same time such Clinician/Provider is contracted with the Group due to potential or actual conflict of interest between the Clinician/Provider's and Group's patient(s) that he/she may be working with at the time, except with express written approval of the Group.

Clinician's/Provider's may not engage in business relationships with any other employee or independent contractor working with the Group within a 20-mile radius of the Group for a period of three years after the end of your contract without the specific written authorization of the Group. Such breaches will result in monetary damages to be paid to the Group as determined at that time.

## Article 6 - Term and Termination
**Section: 6.a Term.** This Agreement shall initially be in effect from the date this Agreement was first signed by both parties and will continue in effect until terminated as provided in this Agreement, for a period of a 3 year term from the date credentialing is complete, and shall be renewed automatically for succeeding one-year terms, unless either party should provide 180 days notice prior to the expiration of the then-current term or otherwise terminated as provided in this Agreement. Upon reasonable request by the Clinician/Provider, the Group shall provide written confirmation as to the credentialing completion date.

**Section: 6.b Termination without Cause.** Neither party may terminate this Agreement at any time without justifiable cause.

**Section: 6.c Termination of Agreement for Justifiable Cause.** This Agreement may be terminated for the following justifiable causes:

1. Immediately by the Group, if it determines, pursuant to the credentialing and peer review procedures that the Clinician/Provider is not providing services according to the standards established and deemed necessary/appropriate by the Group.

2. By either party, if the other party is in material breach of this Agreement, and fails to resolve the breach within ten (10) business days of written notice of such breach by the non-breaching party. Material breach includes but is not limited to the following: Failure of Clinician/Provider to provide his/her services to the Group's clients for the minimum number of hours provided in this contract: 35 hours, which hours may be composed of times the Clinician/Provider schedules to see Group's patients.

3. Immediately if the Clinician/Provider's license is suspended, or the Clinician/Provider is not in good standing with their licensing board at any time during the duration of this Agreement.

4. The Group may terminate this agreement for any behavior by Clinician/Provider, which it considers detrimental to the work environment, and the provision of services to patients and subscribers.

**Section: 6.d Termination By Either Party.** This agreement will terminate automatically on the occurrence of any of the following events:

(a) Bankruptcy or insolvency of either party.
(b) Sale of the business of either party.
(c) Death of either party.
(d) Assignment of this agreement by either party without the consent of the other party.

**Section: 6.e Suspension.** The Group may, upon written notice, suspend the Clinician's/Provider's participation under this Agreement pending the conclusion of any investigation or inquiry into any circumstances or allegations that the Group determines, in its absolute discretion, cause for termination of this Agreement.

**Section: 6.f Clinician's/Provider's Obligations upon Termination.** Upon termination of this Agreement, the Clinician/Provider shall cooperate with Group to transfer Subscribers to other health care professionals designated by he Group, and shall provide such services as may be necessary to ensure proper continuity of patient care. The Group shall pay front office staff to contact the patients by telephone and/or in writing to assist with the transition from the Clinician/ Provider. The Clinician/Provider shall transfer to the Group or its designee the Clinician's/Provider's medical records relating to Subscribers and patients upon such termination or suspension. The Clinician/Provider shall return to the Group all patient lists, contracts, manuals, policies and procedures, and other Proprietary Information of Group, and shall not use any such information for the purpose of soliciting patients of the Group or otherwise competing with it. Any patients transferred to a private practice by the Clinician/Provider will result in charges for monetary damages to be decided upon at the time of the

violation. Any exceptions must be in writing.

### Article 7 - General Provisions

**Section: 7a. Notices.** Any notices required to be given under this Agreement by either Party to the other may be affected by personal delivery in writing or by mail, registered or certified, postage prepaid with return receipt requested. Mailed notices must be addressed to the parties at the addresses appearing in the introductory paragraph of this Agreement, but each party may change the address by giving written notice in accordance with this paragraph. Notices delivered personally will be deemed communicated as of actual receipt; mailed notices will be deemed communicated as of the day of receipt or the fifth day after mailing, whichever occurs first.

**Section: 7b. Entire Agreement of the Parties.** This Agreement supersedes any and all agreements, either oral or written, between the parties with respect to the rendering of services by the Clinician/Provider for the Group and contains all of the representations, covenants, and agreements between the parties with respect to the rendering of those services. Each Party to this Agreement acknowledges that no representations, inducements, promises, or agreements, orally or otherwise, have been made by any Party, or anyone acting on behalf of any Party, which is not contained in this Agreement, and that no other agreement, statement, or promise not contained in this Agreement will be valid or binding. Any modification of this Agreement will be effective only if it is in a writing signed by the Party to be charged.

**Section: 7c. Partial Invalidity.** If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, void, or unenforceable, the remaining provisions will continue in full force and effect without being impaired or invalidated in any way.

**Section: 7d. Payment of Moneys Due Deceased Clinician/Provider.** If the Clinician/Provider dies before completing the services under this Agreement, any moneys due to the Clinician/Provider from the Group under this Agreement as of the date of death will be paid to the Clinician/Provider's executors, administrators, heirs, personal representatives, successors, and assigns.

**Section: 7e. Arbitration.** Any controversy between the parties to this Agreement involving the construction or application of any of the terms, covenants, or conditions of this Agreement will, on the written request of one Party served on the other, be submitted to arbitration. The arbitration will comply with and be governed by the provisions of the California Arbitration Act, Sections 1280 through 1294.2 of the California Code of Civil Procedure.

The parties will each appoint one person to hear and determine the dispute. If those two persons are unable to agree, then they will select a third impartial arbitrator whose decision will be final and conclusive on both parties. The expenses of arbitration, including attorney's fees, shall be borne by the losing party as determined by the arbitrator.

**Section: 7f. Liquidated Damages.** The parties agree that in the event of a breach of this Agreement by either party, it would be impracticable or extremely difficult to fix the actual damage and, therefore, the breaching party will pay to the non-breaching party as liquidated damages and not as a penalty the sum of $20,000.00, which represents a reasonable compensation for the loss incurred because of the breach.

**Section: 7g. Attorneys' Fees.** If any legal action based in contract law, including an action for declaratory relief, is brought to enforce or interpret the provisions of this Agreement, the prevailing party will be entitled to reasonable attorneys' fees, which may be set by the court in the same action or